## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

JULIAN BOKIS )
GAELLE MACDONALD )
DESHIKA BREWER )
GEORGE CARRASQUILLO )
SHERVONNE CLARKE )
STEPHANIE CONTOLE )
STEVEN COOPER )
DANIELLE CROMB )
ALBERT DOMINGUEZ )
MICHAEL FEDORKO )
JELISEA FORBES )
CYNTHIA GAYOSO )
SHIRA GILL )
SARAH GRANO )  Case No. _____
NELL HARRINGTON )
NICOLE JONES )  CLASS ACTION COMPLAINT
OPEYEMI LADUNNI )
GENEVIEVE LAVIN )  JURY TRIAL DEMANDED
RANDY LUPERCIO )
CARLOS MORALES )
HEATHER NIX )
ANEISHA ROBINSON )
LATANYA SAM )
LORIN SANCHEZ )
TYLER WARD )
SHARON WASHINGTON )
MARSHA WOODS, )
 )
      Plaintiffs, )
 )
 )
v. )
 )
 )
JETBLUE AIRWAYS CORPORATION, )
 )
      Defendant. )
 )
 )
 )
_____ )

1

## CLASS ACTION COMPLAINT

1.      All Plaintiffs, including Representative Plaintiffs Julian Bokis and Gaelle MacDonald, are current and former employees of Defendant JetBlue Airways Corporation who work or have worked as Inflight Crewmembers (i.e., flight attendants) in the last three years. Plaintiffs bring this action as a class action pursuant to the Family Medical and Leave Act (FMLA), 29 U.S.C. § 2061, *et seq.*, against Defendant on behalf of themselves and all others similarly situated because of Defendant's unlawful interference and retaliation against Plaintiffs and similarly situated Inflight Crewmembers for exercising their legal rights under the FMLA. Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 and compensation, damages, equitable, and all other relief available under the FMLA, 29 U.S.C. § 2617.

## JURISDICTION AND VENUE

2.      Jurisdiction is conferred on this Court by 29 U.S.C. § 2617 and 28 U.S.C. § 1331.

3.      Venue lies within this district pursuant to 28 U.S.C. § 1391.

## PARTIES

4.      Plaintiff Julian Bokis is employed by Defendant as an Inflight Crewmember who had approved intermittent FMLA leave and is based out of Boston. Plaintiff Gaelle MacDonald is employed by Defendant as an Inflight Crewmember with approved intermittent FMLA leave and is based out of Los Angeles. Plaintiffs Bokis and MacDonald bring this action as a class action on behalf of themselves and the class defined below in accordance with 29 U.S.C. § 2617(a)(2)(B) and Fed. R. Civ. P. 23.

5.      All other Plaintiffs and putative Class Members are or have been employed by Defendant as Inflight Crewmembers within the last three years and have or had been approved to take intermittent FMLA leave.

6.    Defendant JetBlue Airways Corporation ("JetBlue") is a Delaware corporation headquartered at 27-01 Queens Plaza North, Long Island City, New York, 11101. Defendant JetBlue may be served with process by serving Scott Roper, at 27-01 Queens Plaza North, Long Island City, New York, 11101.

7.    Defendant is an "employer" within the meaning of 29 U.S.C. § 2611.

## FACTS

### *The Family Medical and Leave Act*

8.    The FMLA is "intended to allow employees to balance their work and family life by taking reasonable unpaid leave for medical reasons," including "for the care of a child, spouse, or parent who has a serious health condition," and for the employee's own serious health condition. 29 C.F.R. § 825.101(a); 29 C.F.R. § 825.100.

9.    "The FMLA was predicated on two fundamental concerns—the needs of the American workforce, and the development of high-performance organizations. Increasingly, America's children and elderly are dependent upon family members who must spend long hours at work. When a family emergency arises that requires workers to attend to seriously-ill children or parents, or to newly-born or adopted infants, or even to their own serious illness, workers need reassurance that they will not be asked to choose between continuing their employment, and meeting their personal and family obligations or tending to vital needs at home." 29 C.F.R. § 825.101(b).

10.    Employees who are eligible for FMLA leave are entitled to take up 12 workweeks of protected leave in a 12-month period if they, or a family member, suffer from a serious health condition. 29 U.S.C. § 2612.

3

11. One type of leave available under the FMLA is intermittent leave. Intermittent FMLA leave permits employees to take their approved FMLA leave periodically in separate blocks of time, due to a single qualifying reason. 29 C.F.R. § 825.202.

12. FMLA leave may be taken intermittently "when medically necessary for planned and/or unanticipated medical treatment of a serious health condition" or "to provide care or psychological comfort to a covered family member with a serious health condition." 29 C.F.R. § 825.202.

13. An employee may need to take intermittent leave for a qualified medical condition or to care for a family member on short notice, as it may not be medically necessary or predictable until shortly before the employee is scheduled to report to work. For example, intermittent FMLA leave may need to be taken for flare ups of chronic conditions such as Crohn's disease, ulcerative colitis, rheumatoid arthritis, or migraines. For further example, intermittent leave may also be needed to provide emergent care for an ill family member or where other pre-scheduled care unpredictably falls through.

### *JetBlue Corporation*

14. JetBlue is a low-cost airline that flies to over 100 destinations across North and South America, the Caribbean, and Europe.

15. JetBlue employs Inflight Crewmembers, known colloquially as flight attendants, at each of JetBlue's six airport bases: Boston (BOS), Newark (EWR), Fort Lauderdale (FLL), New York (JFK), Los Angeles (LAX), and Orlando (MCO).

16. Inflight Crewmembers perform both physical and safety-based tasks throughout their shifts, and are responsible for ensuring cabin safety, security, and customer comfort while they travel with commercial passengers at high altitudes and in enclosed aircraft cabin spaces.

Inflight crewmembers also perform specific job duties including, but not limited to, conducting safety briefings, managing emergency procedures, assisting with boarding and deplaning, and managing the cabin environment.

### *ARR and Employment Benefits*

17.     JetBlue uses various metrics to assess an Inflight Crewmember's performance and attendance.

18.     One metric that JetBlue uses is the Attendance Reliability Rating (ARR), which measures an Inflight Crewmember's attendance through a percentage-based rating system.

19.     An employee's ARR percentage is calculated based on the number of days they actually worked versus the total number of days they were scheduled to work.

20.     For example, if an Inflight Crewmember worked 93 out of 100 days scheduled, that would result in an ARR of 93%.

21.     When an Inflight Crewmember is scheduled to work, they are placed into a "pairing." If they are on call, they are placed into a "reserve block."

22.     Authorized paid time off and other types of leave, including FMLA leave, do not reduce the ARR percentage if the Inflight Crewmember has been removed from the pairing or reserve block by 12:00 noon the day prior to the scheduled shift.

23.     However, if an Inflight Crewmember calls out after 12:00 noon the day prior to the scheduled shift, including when approved intermittent FMLA leave is used, that absence is counted against their ARR score.

24.     ARR scores are calculated on a quarterly basis, and Inflight Crewmembers receive written ARR statements by the 3rd day of the next quarter, detailing their absences during the rated quarter and their resulting eligibility for certain employment benefits.

25.     JetBlue uses the ARR to determine eligibility for various employment benefits. Such benefits, described in more detail below, are provided to Inflight Crewmembers by default unless their ARR falls below a certain percentage threshold due to their absences from work.

26.     For example, Inflight Crewmembers are eligible for "incentive points," which can be redeemed for paid days off. Inflight Crewmembers who fly at least 35 hours per month and who have a 100% ARR for that quarter earn 1 incentive point.

27.     Due to the nature of the airline industry, many Inflight Crewmembers live in a different city than they are based out of, and commute on JetBlue flights to their base. Unlike flying standby, in which an employee can only get a seat on the plane if there is an empty seat, a positive space ticket is a guaranteed seat on the plane. Thus, using positive space to commute is more reliable and a preferred method of commuting to and from the base.

28.     JetBlue also uses ARR scores to determine eligibility for positive space commuting benefits.

29.     To be eligible for the benefit of roundtrip positive space commuting to and from the base, an Inflight Crewmember must have an ARR of 100%.

30.     In the alternative, for employees who do not need to commute to and from their base, an Inflight Crewmember with an ARR of 100% is eligible to receive a roundtrip positive space leisure ticket.

31.     If an Inflight Crewmember has an ARR of between 97.5% and 100%, they are eligible for one-way positive space commuting, or a one-way positive space leisure ticket.

32.     If an Inflight Crewmember has an ARR of between 95% and 97.5%, they are eligible for 2 super passes, which are the highest level of non-revenue standby tickets.

33.     Inflight Crewmembers with a rating of below 95% ARR are not eligible for the positive space or super pass employment benefits.

34.     Due to the nature of intermittent FMLA leave, which is often used for unpredictable flare-ups of chronic conditions, or unplanned medical events for themselves or family members, an Inflight Crewmember may not be able to call out by the 12:00 noon deadline the day before their scheduled shift. Thus, JetBlue penalizes the use of approved intermittent FMLA leave by counting leave that is requested after the deadline—despite being protected by the FMLA and approved by JetBlue—against the ARR score, thereby reducing the Inflight Crewmember's ability to receive employment benefits such as incentive points, positive space tickets, and super passes.

35.     Inflight Crewmembers who use approved intermittent FMLA are more likely to be negatively affected by the 12:00 noon call out requirement.

36.     Inflight Crewmembers who do not use approved intermittent FMLA leave have a higher likelihood of receiving these employment benefits because call outs for reasons such as regular days off or jury duty can typically be planned in advance of the day prior to the scheduled shift.

37.     Thus, JetBlue retaliates against Inflight Crewmembers who use their approved intermittent FMLA leave by denying them employment benefits that are generally available to Inflight Crewmembers who do not use intermittent FMLA leave or otherwise exercise their FMLA rights.

38.     JetBlue's system of penalizing intermittent FMLA leave use by reducing an Inflight Crewmembers ARR also interferes with the use of or exercise of FMLA rights, as Inflight Crewmembers know that their ARR score will be affected if they call out after the deadline, and thus are hesitant to use their approved FMLA leave. In fact, some Inflight Crewmembers choose

7

not to renew their FMLA benefit approvals—despite an ongoing condition for which FMLA leave has been previously approved—to avoid negatively impacting their employment.

### *Letters of Conversation and Progressive Guidance*

39.     In addition to counting short call intermittent FMLA absences against an Inflight Crewmember's ARR, JetBlue also investigates and disciplines Inflight Crewmembers for using approved FMLA leave.

40.     JetBlue has a system of progressive discipline for Inflight Crewmembers, with the lowest level being a Letter of Conversation.

41.     After a Letter of Conversation, the next step in the progressive discipline is an Initial Progressive Guidance, then Continued Progressive Guidance, then Final Progressive Guidance, and finally Employment Review.

42.     JetBlue issues Letters of Conversation to Inflight Crewmembers, including Plaintiffs, who use FMLA leave during periods of Critical Coverage, regardless of how much advanced notice was given, and regardless of if the FMLA usage counted against the ARR score.

43.     JetBlue designates times that are more challenging in terms of flight loads and scheduled flights as "Critical Coverage" periods. These periods often reflect federal holidays, high travel weekends, or weather events. For example, for 2025-2026, periods of Critical Coverage included July 2-6 (corresponding with Independence Day), November 25 – December 1 (Thanksgiving), and December 22-27 (Christmas).

44.     After these Critical Coverage periods, JetBlue opens investigations into Inflight Crewmembers who were absent during the Critical Coverage periods, including those Crewmembers whose absences were for approved FMLA leave.

8

45.    JetBlue then issues Letters of Conversation to Inflight Crewmembers who were found to have what it refers to as "patterns of absences" during Critical Coverage periods, regardless of the reasons for those absences.

46.    Under JetBlue's policy, the accrual of multiple Letters of Conversation can result in additional progressive discipline, up to and including termination.

47.    JetBlue has also placed multiple Inflight Crewmembers, including Plaintiffs, on Initial Progressive Guidance for using approved FMLA leave during Critical Coverage days.

48.    Inflight Crewmembers who are placed on Initial Progressive Guidance are unable to be considered or selected for certain positions or special assignments.

49.    Therefore, JetBlue retaliates against Inflight Crewmembers who use FMLA by investigating their use of approved FMLA leave use during Critical Coverage days, and by disciplining them for using approved FMLA leave.

50.    JetBlue systematically opens investigations and issues disciplinary notices despite having no evidence that the Inflight Crewmembers were improperly using FMLA leave.

51.    JetBlue's unwarranted investigations and issuance of disciplinary notices to employees who need to use approved FMLA leave, most often intermittent leave, has caused and continues to cause Inflight Crewmembers including Plaintiffs to be discouraged from using their approved FMLA leave, thus, interfering with Inflight Crewmembers rights under the FMLA.

### *Inflight Crewmembers*

52.    All Plaintiffs, including the Representative Plaintiffs, are Inflight Crewmembers, who have or had approved FMLA leave.

53.    All Plaintiffs are subject to JetBlue's policies that retaliate and discriminate against those who use FMLA leave, including the lowering of ARR scores and the denial of employment

9

benefits, the investigation into FMLA leave, the use of discipline for using FMLA leave, and denying employment positions and assignments because of the use of approved FMLA leave.

*Julian Bokis*

54. Representative Plaintiff Julian Bokis was hired by JetBlue as an Inflight Crewmember on September 28, 2022, and since that time has been based out of Boston (BOS).

55. In 2025, JetBlue approved Plaintiff Bokis for intermittent FMLA leave for his serious medical condition.

56. On March 19, 2025, during his Reserve Availability Period, Plaintiffs Bokis was notified of an assignment. The Reserve Availability Period is a timeframe in which an Inflight Crewmember is on call.

57. However, a few hours after Plaintiff Bokis was notified of the assignment, he experienced a flareup of his medical condition for which he had approved intermittent FMLA leave.

58. As such, Plaintiff Bokis removed himself from the assignment, and followed the appropriate reporting procedures to use his intermittent FMLA leave, which was then approved by JetBlue.

59. A week later, on March 28, 2025, Plaintiff Bokis was notified that he was under investigation for his FMLA use on March 19, 2025.

60. On April 7, 2025, Plaintiff Bokis had a virtual meeting with Crew Relations regarding the investigation into his FMLA callout on March 19, 2025. During this meeting, the legitimacy of his FMLA leave use was questioned despite his provision of supporting information. Without any evidence or justification, Crew Relations told Plaintiff Bokis that they did not believe that the absence was due to his medical condition.

61.   Thereafter, on May 9, 2025, Plaintiff Bokis received an email confirming that he would receive a Letter of Conversation regarding his FMLA approved absence.

62.   JetBlue issued Plaintiff Bokis a Letter of Conversation regarding his FMLA approved absence without any legitimate, non-discriminatory reason for doing so, or without any legitimate belief that his FMLA use was improper.

63.   Prior to being notified that he was under investigation for FMLA use, Plaintiff Bokis had applied for a Special Assignment (SPA) as an Inflight & Catering Auditor.

64.   The In-Flight Auditor is a highly sought-after and desirable position among Inflight Crewmembers because it involves less physical labor and involves overseeing other Inflight Crewmembers.

65.   Plaintiff Bokis was interviewed for the Inflight & Catering Auditor position in the time period between the notice of investigation on March 28, 2025, and issuance of the Letter of Conversation on May 9, 2025.

66.   Plaintiff Bokis was rejected for the position while the investigation into his FMLA leave was ongoing.

67.   Plaintiff Bokis had a similar career history and resume as that of the candidates who were ultimately selected; however, none of the selected candidates had approved FMLA leave. Thus, the distinguishing factor between Plaintiff Bokis and the selected candidates was his use of protected and approved FMLA leave.

68.   As a result of the investigation into his FMLA use, and the loss of potential employment benefits due to using his FMLA, Plaintiff Bokis was hesitant to use his approved FMLA leave in the future, and was discouraged from doing so.

69.     As a result of JetBlue's policies regarding FMLA use, Plaintiff Bokis' ARR score was decreased and he lost out on obtaining employment benefits, including positive space leisure tickets and super passes.

70.     When it came time to renew his FMLA leave for 2026, Plaintiff Bokis chose not to renew his leave due to fear of continued reprisal for requesting and using otherwise approved leave.

*Gaelle MacDonald*

71.     Representative Plaintiff Gaelle MacDonald began working as an Inflight Crewmember for JetBlue in September of 2023, and since that time has been based out of Los Angeles (LAX).

72.     Beginning in or around the fall of 2024, JetBlue approved Plaintiff MacDonald for intermittent FMLA leave for a serious medical condition.

73.     Plaintiff MacDonald used her approved intermittent FMLA leave throughout the end of 2024 and 2025.

74.     In November of 2025, Plaintiff MacDonald received an email from JetBlue stating that she was being investigated for her "FMLA callouts" and setting an investigatory meeting regarding a Letter of Conversation to occur on November 27, 2025. However, a few days later, Plaintiff MacDonald received an email notifying her that the scheduled meeting was canceled.

75.     Despite the fact that the investigatory meeting was canceled, Plaintiff MacDonald received a subsequent telephone call from her supervisor in which she was questioned as to at least three dates she called out of work during July 2025 for which Plaintiff had used approved intermittent FMLA leave. Plaintiff also eventually received a Letter of Conversation dated November 1, 2025.

12

76.    On this same phone call, Plaintiff MacDonald was told by her supervisor that she could be disciplined and terminated if she kept calling out, even though her leave was otherwise approved.

77.    In January of 2026, Plaintiff MacDonald received an email regarding an investigation into her FMLA callouts during Critical Coverage days, including the July 2025 dates about which she was previously questioned.

78.    Plaintiff MacDonald had a meeting with her supervisors on February 2, 2026, in which she was questioned regarding whether her call outs within the last six months were approved as intermittent FMLA leave. Plaintiff MacDonald made clear in the meeting that she had taken FMLA leave on the dates in question, and that the leave had been approved.

79.    However, a few days after the February 2, 2026, meeting, Plaintiff MacDonald received an email informing her that she was put on Initial Progressive Guidance for her alleged "pattern" of callouts during Critical Coverage periods.

80.    JetBlue issued Plaintiff MacDonald a Letter of Conversation and placed her on Initial Progressive Guidance regarding her FMLA approved absences without any legitimate, non-discriminatory reason for doing so, or without any belief that her FMLA use was improper.

81.    As a result of Defendant's unlawful actions and the threat of future discipline, starting the beginning of March 2025, Plaintiff MacDonald has avoided using her approved FMLA leave and, instead, has been requesting use of Unpaid Time Off (UTO) instead of exercising her rights to use protected FMLA leave.

## CLASS ACTION FOR VIOLATION OF THE FMLA

82.    Defendant has violated the provisions of the FMLA, resulting in damages to Plaintiffs Bokis and MacDonald, and all Plaintiffs and Class Members in the form of lost

13

employment benefits, liquidated damages, incurred and incurring costs, and reasonable attorneys' fees.

83.    The FMLA permits class actions. 29 U.S.C. § 2617(a)(2)(B).

84.    The Proposed Class is defined as follows: All individuals employed by JetBlue as Inflight Crewmembers who used approved FMLA leave at any time within the past three years.

85.    There are in excess of 300 members of the Class. Thus, the Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, Class members are known to Defendant, are readily identifiable, and can be located through Defendant's records.

86.    There are questions of law and fact common to the members of the Class, including but not limited to:

a.    Whether Defendant violated the FMLA by reducing Inflight Crewmembers ARRs because of approved FMLA leave usage, and thus, reduced eligibility for employment benefits such as positive space tickets and incentive points;

b.    Whether Defendant violated the FMLA by investigating Inflight Crewmember's FMLA leave use without cause, issuing discipline such as Letters of Conversation because of the use of approved FMLA leave, and implementing progressive guidance because of the use of approved FMLA leave;

c.    Whether Defendant violated the FMLA by discouraging Inflight Crewmembers from using approved FMLA leave;

d.    Whether Defendant violated the FMLA by rejecting candidates for job applications for special assignments due to FMLA leave use;

14

e.   Whether, as a result of these FMLA violations, Plaintiffs and members of the Class have suffered monetary damages by failing to receive employment benefits otherwise provided to Inflight Crewmembers who do not utilize FMLA leave;

f.   Whether Plaintiffs and members of the Class are entitled to recover liquidated damages; and

g.   Whether as a result of these FMLA violations, Plaintiffs and members of the Class are also entitled to an award of attorneys' fees and expenses.

87.   The claims of Representative Plaintiffs Bokis and MacDonald are typical of all members of the Class. Named Plaintiffs Bokis and MacDonald have the same interests in this matter as all members of the Class.

88.   Plaintiffs Bokis and MacDonald are adequate Class Representatives, are committed to pursuing this action, and, in the undersigned attorneys, have retained competent counsel experienced employment law and class action litigation.

## COUNT I

## INTERFERENCE UNDER THE FAMILY MEDICAL AND LEAVE ACT

89.   Plaintiffs hereby repeat and reallege the allegations in Paragraphs 1-88.

90.   During the full statutory period, Plaintiffs and the Class were protected by the provisions of the FMLA, 29 U.S.C. § 2601 *et seq*.

91.   The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1).

92.   JetBlue interfered with, restrained, and denied the exercise of the protected rights of Plaintiffs and the putative Class Members when it, among other things, conducted investigatory

15

meetings related to lawful FMLA use, issued disciplinary proceedings including Letters of Conversation and put employees on Progressive Guidance for lawful intermittent FMLA use, and reduced attendance scores based on FMLA leave usage resulting in a loss of employment benefits.

93.     JetBlue also interfered with the rights of Plaintiffs and putative Class Members by creating an environment that discouraged the use of FMLA leave.

94.     JetBlue's interference into Plaintiffs and putative Class Members FMLA rights was not in good faith or based on reasonable grounds.

95.     Because JetBlue violated, and continues to violate, the FMLA, Plaintiffs and the putative Class Members are entitled to compensatory damages for lost employment benefits, as well as liquidated damages, and declaratory and equitable relief. 29 U.S.C. § 2617(a).

96.     Plaintiffs and the putative Class Members are also entitled to attorneys' fees and costs. 29 U.S.C. § 2617(a).

## COUNT II

### RETALIATION UNDER THE FAMILY MEDICAL AND LEAVE ACT

97.     Plaintiffs hereby repeat and reallege the allegations in Paragraphs 1-88.

98.     During the full statutory period, Plaintiffs and the Class were protected by the provisions of the FMLA, 29 U.S.C. § 2601 *et seq*.

99.     The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1). "The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee…for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c).

16

100.    JetBlue retaliated against Plaintiffs and putative Class Members for engaging in activity protected by the FMLA in the form of taking and/or attempting to take leave approved and permitted under the FMLA.

101.    Specifically, Defendant took adverse employment actions against Plaintiffs and putative Class Members by denying them employment benefits because Plaintiffs took leave permitted under the FMLA, by investigating and disciplining Plaintiffs for using approved FMLA leave without any indication such use was improper, and by rejecting candidates for special assignments due to FMLA leave use.

102.    JetBlue's retaliation against Plaintiffs and putative Class Members for using FMLA was not in good faith or based on reasonable grounds.

103.    Because JetBlue violated the FMLA, Plaintiffs and the putative Class Members are entitled to compensatory damages for lost employment benefits, as well as liquidated damages, and declaratory and equitable relief. 29 U.S.C. § 2617(a).

104.    Plaintiffs and the putative class members are also entitled to attorneys' fees and costs. 29 U.S.C. § 2617(a).

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray that this Court grant relief against Defendant as follows:

a)    Enter a declaratory judgment declaring that Defendant has violated statutory and legal obligations and deprived Plaintiffs and Class Members of their rights, privileges, protections, benefits, and entitlements under the law, as alleged herein;

b)    Order a complete and accurate accounting of all benefits to which Plaintiffs and the Class Members are entitled;

17

c)      Award Plaintiffs and Class Members all damages under the FMLA in the form of

loss of benefits and liquidated damages;

d)      Award Plaintiffs and Class Members their reasonable attorneys' fees to be paid by

the Defendant, and the costs and disbursements of this action; and

e)      Grant such other legal and equitable relief as may be just and proper.

### JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial in this action.


Dated: April 23, 2026                             Respectfully submitted,


                                                  */s/ Sara L. Faulman*
                                                  Sara L. Faulman
                                                  Sarah M. Block
                                                  Rachel Lerner
                                                  McGILLIVARY STEELE ELKIN LLP
                                                  1101 Vermont Ave., N.W.
                                                  Suite 1000
                                                  Washington, DC 20005
                                                  Phone: (202) 833-8855
                                                  slf@mselaborlaw.com
                                                  smb@mselaborlaw.com
                                                  rbl@mselaborlaw.com

                                                  */s/ Des R.Z. Salomone*
                                                  Desiree "Des" Salomone
                                                  RIVA LAW PLLC
                                                  P.O Box 2214
                                                  Kingston, NY 12402
                                                  des@rivalaw.us